# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
No. 16-1144
(Not to be Published)

```
* * * * * * * * * * * * * * * * * * * * * * * *
ZACHARIAH OTTO,                               *
                                              *        Chief Special Master Corcoran
                   Petitioner,                *
                                              *        Dated: February 10, 2020
v.                                            *
                                              *        Attorney's Fees and Costs;
                                              *        Interim Fees; Expert Costs;
SECRETARY OF HEALTH AND                       *        Travel Costs.
HUMAN SERVICES,                               *
                                              *
                   Respondent.                *
                                              *
* * * * * * * * * * * * * * * * * * * * * * * *
```

*Andrew D. Downing*, Van Cott & Talamante, Phoenix, AZ, for Petitioner.

*Mark Helle*, U.S. Dep't of Justice, Washington, DC, for Respondent.

## DECISION GRANTING INTERIM AWARD OF ATTORNEY'S FEES AND COSTS[1]

On September 15, 2016, Zachariah Otto filed a petition seeking compensation under the National Vaccine Injury Compensation Program ("Vaccine Program")[2] alleging that the human papillomavirus ("HPV") vaccine he received on October 13, 2014, caused him to experience an adverse reaction, including but not limited to chronic fatigue or postural orthostatic intolerance syndrome ("POTS"). An entitlement hearing was held on November 4–5, 2019, in Washington, DC, But no ruling or decision in the matter has yet issued.

---

[1] Although this Decision has been formally designated "not to be published," it will nevertheless be posted on the Court of Federal Claims' website in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012). This means that the Decision will be available to anyone with access to the internet. As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Decision will be available to the public. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755 (codified as amended at 42 U.S.C. §§ 300aa-10–34 (2012)) (hereinafter "Vaccine Act" or "the Act"). All subsequent references to sections of the Vaccine Act shall be to the pertinent subparagraph of 42 U.S.C. § 300aa.

Petitioner has now requested a second interim award of attorney's fees and costs in the total amount of $145,887.96 (representing $76,116.50 in attorney's fees, plus $69,771.46 in costs). Second Mot. Interim Attorney's Fees and Costs at 8, November 20, 2019, ECF No. 91 ("Second Interim Fees App.").

Respondent filed a Response to Petitioner's Motion on December 4, 2019, deferring to my discretion as to whether Petitioner has met the legal standards for an interim fees and costs award. Response at 2, ECF No. 92. Respondent otherwise represents that the statutory and other legal requirements for an award of attorneys' fees and costs are met, and he recommends that if an interim award is appropriate, I calculate a reasonable award. *Id*. at 2–3.

For the reasons stated below, I hereby **GRANT IN PART** Petitioner's Motion, awarding at this time interim costs in the amount of $64,820.31, while deferring ruling on additional attorney's fees requested since the first interim request.

**Procedural History**

This action has been underway for over three years. *See* Pet. at 1, Sept. 15, 2016, ECF No. 1. Petitioner filed a first application for interim fees and costs on August 21, 2018. First Mot. Interim Attorney's Fees and Costs, ECF No. 39 ("First Interim Fees App.") (requesting $59,208.75). I issued a decision granting in part Petitioner's first motion for attorney's fees and costs which included attorney's fees generated to that date (but not fees associated with the hearing—which was still a year away). Decision on Attorney's Fees and Costs, October 5, 2018, ECF No. 43 ("First Interim Fees Decision") (awarding $42,143.50 in fees and $1,225.25 in costs, and deferring ruling on expert costs). I deferred ruling on costs related to Petitioner's expert witnesses, because at the time, "the causation theories advanced in such cases have proven unreliable and have accordingly not resulted in favorable decisions." *Id.* Waiting until after the hearing would help me determine if Petitioner's experts were helpful in resolving the case and if their theories merely "parrot[ed] back previously-rejected theories." *Id.* I instructed Petitioner that he "may renew his request for expert costs after [the] hearing." *Id.* As noted, a hearing has now been held.

**ANALYSIS**

I. **Legal Standard for Awarding Interim Fees and Costs**

I have previously discussed at length the standards applicable to determining whether to award interim fees and costs. *See, e.g.*, *Auch v. Sec'y of Health & Human Servs.*, No. 12-673V, 2016 WL 3944701, at *6–9 (Fed. Cl. Spec. Mstr. May 20, 2016); *Al-Uffi v. Sec'y of Health & Human Servs.*, No. 13-956V, 2015 WL 6181669, at *5–9 (Fed. Cl. Spec. Mstr. Sept. 30, 2015). It

2

is well-established that a decision on entitlement is not required before interim fees and costs may be awarded. *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1352 (Fed. Cir. 2008); *see also Cloer v. Sec'y of Health and Human Servs.*, 675 F.3d 1358, 1362 (Fed. Cir. 2012); *Fester v. Sec'y of Health & Human Servs.*, No. 10-243V, 2013 WL 5367670, at *8 (Fed. Cl. Spec. Mstr. Aug. 27, 2013). While there is no presumption of entitlement to interim fees and cost awards, special masters may in their discretion make such awards, and often do so. *Perreira v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 34 (1992), *aff'd*, 33 F.3d 1375 (Fed. Cir. 1994). Requests for interim costs are subject to the same standards. *Presault v. United States*, 52 Fed. Cl. 667, 670 (2002); *Perreira*, 27 Fed. Cl. at 34; *Fester*, 2013 WL 5367670, at *16.

## II.    Appropriate Fees Award

I recently considered a second application for interim fees involving the same counsel, Mr. Andrew Downing. *See Schultz v. Sec'y of Health & Human Servs.*, No. 16-539V, 2019 WL 5095634, at *1 (Fed. Cl. Spec. Mstr. Aug. 15, 2019). In *Schultz*, I explained that my policy is to avoid multiple interim attorney's fees awards. *Schultz*, 2019 WL 5095634, at *2. Those same policy concerns apply to this case. No entitlement determination has yet been made, and there is a high likelihood that thereafter additional attorney's fees will be generated (whether in connection with appeal of entitlement or incurred in determining and/or litigating damages). Under such circumstances, it is my view that only one interim fees award is appropriate, with the remainder of fees addressed when the case finally concludes.

Petitioner's counsel has been made aware of my views on this matter (most recently in the *Schultz* interim fees decision, which issued over *three* months before the filing of the present interim request in *this* case). Yet in the present motion, he repeatedly questions my policy of avoiding multiple interim attorney's fees and awards. *E.g.*, Second Interim Fees App. at 2–4. While fees issues are a matter that is solely within my discretion, I will explain my reasoning.

One of the most important aims of the Vaccine Program is expeditious resolutions of petitions. *See, e.g.*, Section 12(d)(2)(A). The Supreme Court has instructed that "the determination of fees 'should not result in a second major litigation.'" *Fox v. Vice*, 563 U.S. 826, 838 (2011) ("trial courts need not, and indeed should not become green-eyeshade accountants"). Indeed, potentially increasing the litigation of fee matters is at odds with promoting judicial economy. *See White v. New Hampshire Dept. of Employment Sec.*, 455 U.S. 445, 453 (1982) (explaining that filing repeated interim fee motions would "serve no useful purpose").

I balance this concern with *Avera*'s directive that interim fees are appropriate where petitioner demonstrates undue hardship. 515 F.3d at 1352. But in my experience multiple interim fees applications rarely meet this standard. *Avera* reflects the concern that a Program petitioner would be out-of-pocket during a lengthy litigation, and that this is contrary to the Vaccine Act's

3

remedial goals. *Id*. Here, by contrast, the fees request seeks prompt payment for the sole benefit of *counsel,* and for work recently performed on this matter. While it is true that the Act's generous fees provisions are intended to ensure the existence of a bar of skilled attorneys ready to represent claimants, it stretches the intent of that provision too far to ask also that the Act provide "just-in-time" payment to Program lawyers, redeeming their fees requests as a case is litigated. To do so not only elevates counsel to the same protected class as petitioners, but (as I have observed frequently when denying serial interim fees requests) essentially puts the Office of Special Masters "into business" with counsel. *Schultz*, 2019 WL 5098963, at *5 n.6 (citing *Dean v. Sec'y of Health & Human Servs.*, No. 13-808V, 2015 WL 8001603, at *9 (Fed. Cl. Spec. Mstr. Nov. 12, 2015)). And it requires me to engage in the sort of piecemeal determinations warned against by the Supreme Court—determinations that distract me from deciding entitlement in this case.

My policies in this regard are not driven by personal animosity toward counsel. I also have empathy for the financial struggles *any* Program attorney faces in attempting to run a successful and solvent practice, and the hardships they may face while awaiting fees payments from the Program. But all of the above counter-considerations counsel against multiple interim fees awards in a single case, except in rare circumstances, and I will therefore continue to defer second interim requests for fees in *all* cases before me. Counsel in this case should not keep requesting them (and is placed on notice that time devoted to future such requests shall not be compensated).

### III.   Requested Costs

Although I am not willing to issue a second interim fees award at this time, costs are another matter. Now that the hearing has concluded, the largest component of costs—those associated with experts—are not likely to recur. The same goes for other trial-oriented costs. It is reasonable that they be reimbursed as shortly after hearing as possible. Thus, I will permit a recovery of such costs at this time.

Just as they are required to establish the reasonableness of requested fees, petitioners must also demonstrate that requested litigation costs are *reasonable*. *Presault*, 52 Fed. Cl. at 670; *Perreira*, 27 Fed. Cl. at 34. Reasonable costs include the costs of obtaining medical records and expert time incurred while working on a case. *Fester*, 2013 WL 5367670, at *16. When petitioners fail to carry their burden, such as by not providing appropriate documentation to substantiate a requested cost, special masters have refrained from awarding compensation. *See, e.g.*, *Gardner-Cook v. Sec'y of Health & Human Servs.*, No. 99-480V, 2005 WL 6122520, at *4 (Fed. Cl. Spec. Mstr. June 30, 2005).

Petitioner requests a total of $69,771.46 in costs. The requested costs herein fall into three general categories: (1) expert costs; (2) travel costs; and (3) office and filing-related costs. The third category includes charges for photocopies, postage, faxes, obtaining medical records, and

Westlaw legal research, all of which are to be reimbursed (in the total amount of $391.85). The other two categories require discussion.

### A. Expert Costs

Petitioner requests a total of $49,885.00 for Drs. Miglis and Shoenfeld. Second Interim Fees App. Ex. A at 44, 49–50. Dr. Miglis billed at a rate of $500 per hour for a total of $6,250.00. *Id*. at 49. Dr. Shoenfeld billed for fifteen hours at an hourly rate of $500 for a total of $7,500.00, plus a fee of $45.00 to wire the retainer money to his account. *Id*. at 50. Petitioner also requests reimbursement for a retainer fee of $2,000.00 paid to Dr. Shoenfeld, as well as an additional $45.00 wiring fee.

In my first interim fees decision, I deferred awarding expert time, explaining that "[n]either requested rate greatly exceeds what experts are often paid for Program work, although $500 per hour is at the top of the general range for expert costs, at least as of the present, and Petitioner has not established that Dr. Miglis should receive that rate." First Interim Fees Decision, at 5. My reservations were also based partly on concerns about the viability of the theories to be offered in this case. Causation theories advanced in similar HPV–POTS cases have been found unreliable. *See, e.g.*, *Johnson v. Sec'y of Health & Human Servs.*, No. 14-254V, 2018 WL 2051760, at *24 (Fed. Cl. Spec. Mstr. Mar. 23, 2018) (finding that Dr. Shoenfeld's testimony on the association between HPV and POTS was not reliable); *Combs v. Sec'y of Health & Human Servs.*, No. 14-878V, 2019 WL 1581672 (Fed. Cl. Spec. Mstr. Feb. 15, 2018).

After reading the expert reports in this case and observing each expert testify at the hearing, I am convinced that their requested rates are warranted. Both produced expert reports that were generally helpful in understanding Petitioner's causation theory. In addition, although I have not ruled on entitlement yet (and cannot therefore say with certainty how persuasive I will find these opinions), I can preliminarily state that the opinions offered were not of the caliber that I would deem inappropriate for compensation.[3]

I have previously found $500.00 per hour to be a reasonable rate for Dr. Shoenfeld's time. *See Johnson v. Sec'y of Health & Human Servs.*, No. 14-254V, 2018 WL 3991262, at *4 (Fed. Cl. Spec. Mstr. July 3, 2018); *Schultz v. Sec'y of Health & Human Servs.*, No. 16-539V, 2018 WL 1835104, at * 4 (Fed. Cl. Spec. Mstr. Feb. 16, 2018). Other special masters have also recently compensated Dr. Shoenfeld at $500.00 per hour. *See Puckett v. Sec'y of Health & Human Servs.*, No. 15-929V, 2018 WL 2225067, at *3 (Fed. Cl. Spec. Mstr. April 17, 2018); *Bello v. Sec'y of*

---

[3] This does not mean that I am finding the opinions *persuasive* or scientifically reliable for entitlement purposes. Indeed, I continue to harbor concerns about the overall persuasiveness of theories that the HPV vaccine can directly damage the autonomic nervous system, or interfere with it, sufficient to cause POTS. In future cases I am likely to resist similar opinions from these or other experts earlier in the case. But for present purposes, I find that both experts should be compensated for their assistance at the hearing for *this* matter.

*Health & Human Servs.*, No. 13-349V, 2017 WL 785692 (Fed. Cl. Spec. Mstr. Jan. 24, 2017). I have not considered Dr. Miglis's requested rate before. But other special masters have found his requested rate of $500.00 per hour reasonable. *See, e.g.*, *Walker v. Sec'y of Health & Human Servs.*, No. 16-543V, 2019 WL 7288770, at *4 (Fed. Cl. Spec. Mstr. Dec. 2, 2019). Accordingly, I find the requested rates for both experts reasonable.

I also find the number of hours billed by Drs. Miglis and Shoenfeld to be reasonable. Dr. Shoenfeld spent 15 hours preparing and writing his expert report. Second Interim Fees App., Ex. A, at 28. He also spent 44.5 hours for the entitlement hearing. *Id.* at 75. This was comprised of 3 hours preparing for the hearing, 13.5 hours in the hearing itself, and 28 hours billed at half his hourly rate for travel. *Id.* Dr. Miglis spent 8.5 hours preparing and writing his expert report. *Id.* at 31. He also spent a total of 40 hours for the entitlement hearing. *Id.* at 77. This included 20 hours preparing for the hearing, 15 hours in the hearing itself, and five hours traveling billed at half his hourly rate. *Id.* at 76–77. In similar cases, I have found that comparable amounts of time preparing an expert report, testifying at an entitlement hearing, and traveling were reasonable. *See Johnson*, 2018 WL 3991262, at *4 (Fed. Cl. Spec. Mstr. July 3, 2018) (compensating Dr. Shoenfeld for "29 hours of work, plus an additional 28 hours" of travel). Thus, I find the amount of time Petitioner's experts spent on this case reasonable.

B. Travel Costs

Although the costs related to the expert witnesses were reasonable, some of Petitioner's travel costs and expenses require adjustment. First, Dr. Shoenfeld's flight from Tel Aviv to Washington, D.C. cost $4,965.00. The receipt provided for this flight was a wire transfer to "Ophir Tours." An online search however showed that the average flight, arriving and departing on the same days of the week, (for coach or economy seating) generally cost between $750 and $1250 depending on when the flight was scheduled.[4] Flights scheduled for similar days in November 2020 cost about $1056. No explanation is given for why Dr. Shoenfeld's flight cost more than *four times* that of similar flights. Nor is any explanation given for what Ophir Tours is or what it does.

The Vaccine Program does not compensate such a high disparity in price without explanation. *See, e.g.*, *Mooney v. Sec'y of Health & Human Servs.*, No. 05-226V, 2014 WL 7715158, at * 12 (Fed. Cl. Spec. Mstr. Dec. 29, 2014) (declining to compensate for higher airfare cost for counsel to sit in a higher class of seating when the extra expense was for comfort, not expense); *McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 5634323, at *22 (Fed. Cl. Spec. Mstr. Sept. 1, 2015) (declining to compensate for the increased price of a first-class

---

[4] Flights from Tel Aviv to Washington, D.C., https://www.kayak.com/flights/TLV-WAS/2020-11-01/2020-11-03?sort=bestflight_a (last visited Feb. 7, 2020). Prices in this range were achieved using this website (and other comparable websites) when scheduling flights a week to several months in advance.

plane ticket). Therefore, Petitioner's costs are reduced by $3,909.00—meaning that Dr. Shoenfeld is only compensated for $1,056.00 of the airfare cost.

Second, Petitioner's counsel and Dr. Miglis arrived in D.C. two days before the hearing. *See* Second Interim Fees App., Ex. A at 34–37, 73. Previous special masters have determined that it is "unfair and unnecessary for petitioner's counsel to travel one day earlier than required . . . ." *See Broekelschen v. Sec'y of Health & Human Servs.*, 102 Fed. Cl. 719, 732 (Fed. Cl. 2011) (affirming special master). No explanation is given for why counsel needed to arrive two days early for the hearing. While it appears they spent some time the morning before the hearing prepping with Dr. Miglis, that alone is not enough to justify the extra expense of arriving two days before the hearing. Accordingly, I find that the requested hotel and food costs from November 2, 2019, are unreasonable. This results in a reduction of $929.17.[5]

Third, expenses for some meals raise concerns. Special masters routinely reduce meal charges that are excessive. *See, e.g.*, *Digerolamo v. Sec'y of Health & Human Servs.*, 2019 WL 4305792, at *4 (Fed. Cl. Spec. Mstr. June 28, 2019) (reducing meal expenses that exceeded the daily per diem). Petitioner requests $524.50 in expenses for a meal at Rare Steakhouse (for 6 people) on November 4 and $348.96 in expenses for a meal at Ghibellina (for 4 people). This results in an average cost per person of $87.33 for the meal at Rare steakhouse, and $87.24 for the meal at Ghibellina. For these meals, I reduce the average charges to the daily per diem rate in Washington, D.C. This results in a reduction of $112.98.[6]

After review of the record I am satisfied that other expenses are reasonable. Petitioner's trial team stayed at a hotel that cost an average of $383.75 per night. Second Interim Fees App. at 7. Petitioner filed records showing that similar hotels in the area cost comparable amounts. *Id.* at 7–8. As I stated in *Schultz* (another case where Mr. Downing was counsel) I find hotel rates greater than $400 per night unjustifiably high. *Schultz*, 2019 WL 5095634, at *3. The rate Petitioner requests toes the line of what is reasonable. Otherwise, I have reviewed Petitioner's other expenses and find them reasonable.

## CONCLUSION

Accordingly, in the exercise of the discretion afforded to me in determining the propriety of interim fees awards, and based on the foregoing, I **GRANT IN PART** Petitioner's Motion for Interim Attorney's Fees, as follows:

---

[5] This reduction is calculated by adding the price of the hotel rooms on November 2, 2019, plus tax, plus the cost of meals incurred on that day.

[6] [Total Cost of Meal] - [Daily GSA Per Diem] x [Number of Meal Participants] = [Amount of Reduction Per Meal]

|  | **Amount Requested** | **Reduction** | **Total Awarded** |
|---|---|---|---|
| **Attorney's Fees** | $76,116.50 | Deferred | $0 |
| **Litigation Costs** | $69,771.46 | $4,951.15 | $64,820.31 |
|  |  |  | **Grand Total: $64,820.31** |

I therefore award a total of **$64,820.31** in interim fees and costs as a lump sum in the form of a check jointly payable to Petitioner and Petitioner's counsel, Mr. Andrew Downing, Esq., representing costs in the amount of $64,820.31.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court **SHALL ENTER JUDGMENT** in accordance with the terms of this decision.[7]

**IT IS SO ORDERED.**

s/ Brian H. Corcoran
Brian H. Corcoran
Chief Special Master

---

[7] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment if (jointly or separately) they file notices renouncing their right to seek review.